**VENABLE LLP**
Ari N. Rothman (SBN 296568)
*anrothman@venable.com*
Allison C. Nelson (SBN 319321)
*acnelson@venable.com*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

*Attorneys for Defendant*
All Web Leads, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION - RIVERSIDE**

Valerie Brumfield and Juanita Williams, individually and on behalf of others similarly situated,

Plaintiffs,

v.

All Web Leads, Inc.,

Defendant.

Case No. 5:24-cv-00038-MRA(SHKx)

Hon. Mónica Ramírez Almadani
Courtroom 10B

**DEFENDANT ALL WEB LEADS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) OR, ALTERNATIVELY, TO COMPEL ARBITRATION AND STAY CASE, OR DISMISS FOR IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(b)(3), OR TRANSFER VENUE, OR STRIKE CLASS CLAIMS**

[*Filed Concurrently With Declaration of William R. Daniel and [Proposed] Order*]

| | |
|---|---|
| Hearing Date: | July 18, 2024 |
| Hearing Time: | 1:30 p.m. |
| Complaint Served: | January 8, 2024 |
| Trial Date: | None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2024, at 1:30 p.m. or as soon thereafter as the matter may be heard in courtroom 10B of the above-entitled court, located at 350 W. First Street, Los Angeles, California 90012, defendant All Web Leads, Inc. will, and hereby does, move the Court to dismiss the claims brought by plaintiffs Valerie Brumfield and Juanita Williams for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). This motion is made on the grounds that:

- The Court lacks general jurisdiction over All Web Leads because All Web Leads is a Texas company headquartered in Austin, Texas, and lacks such "continuous and systematic" contacts with California such that it is not "*essentially* at home" in California. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (emphasis added).
- The Court lacks specific jurisdiction over All Web Leads. Williams is an Alabama resident, and All Web Leads did not call, or cause the calls, that she alleges she received. Likewise, even though plaintiff Brumfield alleges she is a California resident, All Web Leads did not call her or cause the calls to be made to her that she alleges in the complaint. Plaintiffs' claims thus do not arise out of or relate to All Web Leads' contacts with California and thus specific personal jurisdiction is lacking. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added); *Bristol-Meyers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017); *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at 3–5 (D. Ariz. Feb. 11, 2021).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Alternatively, All Web Leads moves the Court to compel plaintiffs to arbitrate their claims and to stay this litigation pending completion of their arbitrations because plaintiffs agreed to arbitrate their claims.

All Web Leads alternatively moves the Court to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3) or transfer venue to the United States District Court for the Western District of Texas under 28 U.S.C. § 1404(a). Venue is improper in the Central District of California because this Court lacks personal jurisdiction over All Web Leads and it is not a district in which "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), given that All Web Leads is located in Texas and did not make the calls to plaintiffs alleged in the complaint. (Daniel Decl., ¶¶ 3–6, 9–12.) The Court may thus dismiss this action under Federal Rule of Civil Procedure 12(b)(3), or transfer the action to Texas for the convenience of the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a); *Jackson v. Euphoria Wellness, LLC*, No. 3:20-CV-03297-CRB, 2020 WL 5366419, at *8 (N.D. Cal. Sept. 8, 2020); *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498–99 (9th Cir. 2000).

As a final alternative, All Web Leads moves the Court to strike plaintiffs' class claims because plaintiffs agreed to forego pursuing such claims.

This motion is based on this notice, the accompanying Memorandum of Points and Authorities, the Declaration of William R. Daniel, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

***Local Rule 7.3 Compliance.*** This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred on February 28, 2024, during which counsel for the parties discussed the personal jurisdiction, arbitration, venue, and class claim issues raised herein.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Dated: April 10, 2024

VENABLE LLP

By: /s/ *Ari N. Rothman*
Ari N. Rothman
Allison C. Nelson

*Attorneys for Defendant*
ALL WEB LEADS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 1

II. THIS COURT LACKS PERSONAL JURISDICTION OVER ALL WEB LEADS .......... 1

A. Facts Establishing Lack of Personal Jurisdiction .......... 1

i. Plaintiffs' Allegations .......... 1

ii. All Web Leads, Inc. .......... 2

B. Legal Standard .......... 2

C. Argument .......... 3

i. No General Jurisdiction Exists Over All Web Leads .......... 3

ii. No Specific Personal Jurisdiction Exists Over All Web Leads .......... 4

iii. Exercising Personal Jurisdiction Over All Web Leads Would Not Comport with Traditional Notions of Fair Play and Substantial Justice .......... 7

III. THE COURT SHOULD ALTERNATIVELY COMPEL PLAINTIFFS TO ARBITRATION .......... 8

A. Facts Mandating Arbitration .......... 8

i. Williams' Arbitration Agreements .......... 8

ii. Brumfield's Arbitration Agreement .......... 10

B. Legal Standard .......... 13

C. Valid Arbitration Agreements Exist .......... 14

D. Williams is Bound to Arbitration Under All Web Leads' Agreement .......... 17

E. Plaintiffs' Claims Fall Squarely Within the Arbitration Agreements' Scope .......... 18

IV. ALTERNATIVELY, THE COURT SHOULD DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE .......... 20

V. THE COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFFS' CLASS CLAIMS .......... 23

VI. CONCLUSION .......... 24

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitbol v. Homelink, LLC*,
No. 220CV03654RGKPJW, 2020 WL 5102149 (C.D. Cal. July 28, 2020) ....7

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987)....7, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....18, 19

*Berman v. Freedom Fin. Network LLC*,
30 F.4th 849 (9th Cir. 2022) ....15, 16, 17

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....13

*Bristol-Meyers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*,
582 U.S. 255 (2017)....3, 4, 5

*Capital Grp. Commc'ns Inc. v. Xedar Corp*,
No. C–13–01793 EDL, 2013 WL 4013711 (N.D. Cal. Aug. 5, 2013) ....19

*Chan v. Charter Communs. Holding Co.*,
No. EDCV 15-0886, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015)....18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....13

*Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*,
158 Cal. App. 4th 1061 (2008) ....18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....4

*Davis v. Einstein Noah Rest. Grp., Inc.*,
No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ....13

*Epitech, Inc. v. Kann*,
204 Cal. App. 4th 1365 (2012) ....18

*Fleetwood Enterprises, Inc. v. Gaskamp*,
280 F. 3d 1069 (5th Cir. 2002) ....17, 18

*Guerrero v. Equifax Credit Info. Servs., Inc.*,
No. CV 11-6555 PSG, 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) ....14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
466 U.S. 408 (1984) ........ 4

*Jackson v. Euphoria Wellness, LLC*,
No. 3:20-CV-03297-CRB, 2020 WL 5366419 (N.D. Cal. Sept. 8, 2020) ........ 21

*Jeong v. Nexo Cap. Inc.*,
No. 21-CV-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ........ 24

*Jones v. GNC Franchising, Inc.*,
211 F. 3d 495 (9th Cir. 2000) ........ 21, 22, 23

*Joseph v. TrueBlue, Inc.*,
No. 2:14-CV-0316-SMJ, 2014 WL 6908968 (E.D. Wash. Dec. 9, 2014) ........ 23

*Kaplan v. Athletic Media Co.*,
No. 23-cv-00229-JST, 2023 WL 8587981 (N.D. Cal. Dec. 8, 2023) ........ 16

*Khalatian v. Prime Time Shuttle, Inc.*,
237 Cal. App. 4th 651 (2015) ........ 19

*Kilgore v. KeyBank, Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012) ........ 20

*Kransco Mfg., Inc. v. Markwitz*,
656 F.2d 1376 (9th Cir. 1981) ........ 7

*Kravets v. Anthropologie, Inc.*,
No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) ........ 15, 16

*Lacour v. Marshalls of CA, LLC*,
No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. April 29, 2021) ........ 24

*Lewis v. UBS Fin. Servs. Inc.*,
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ........ 13

*Marco Holding Co. v. Lear Siegler, Inc.*,
606 F. Supp. 204 (N.D. Ill. 1985) ........ 23

*Martin v. Orbital Energy Grp., Inc.*,
No. 3:22-CV-1968-B, 2023 WL 4533926 (N.D. Tex. July 12, 2023) ........ 17, 18

*McKellar v. Mithril Cap. Mgmt. LLC*,
No. 19-CV-07314-CRB, 2020 WL 1233855 (N.D. Cal. Mar. 13, 2020) ........ 13

*Mina v. Red Robin Int'l, Inc.*,
No. CV-18-9472-PSG, 2020 WL 4037163 (C.D. Cal. Mar. 3, 2020) ........ 22, 23

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042 (9th Cir. 2009) ........................................19

*Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ........................................7

*Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)........................................7

*Neff v. Towbin Dodge, LLC*, No. 2:20-CV-00261-JAM-DMC, 2020 WL 6802188 (E.D. Cal. Nov. 19, 2020) ........................................22, 23

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ........................................14, 15, 17

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995) ........................................3, 4, 5

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) ........................................14

*Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020) ........................................4

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........................................3, 5

*Slaten v. Dick's Sporting Goods, Inc.*, No. 2:23-cv-04861-WLH-MAA, 2024 WL 1136399........................................16

*Snow v. Nectar Brand, LLC*, No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) ........................................14

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555 (9th Cir. 2008) ........................................19

*Walden v. Fiore*, 571 U.S. 277 (2014)........................................3, 5

*Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217 (D. Ariz. Feb. 11, 2021)........................................6, 7

*Yamashita v. LG Chem., Ltd.*, 62 F.4th 496 (9th Cir. 2023) ........................................5

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**Statutes**

28 U.S.C. § 1391(b) ....................20

28 U.S.C. § 1391(b)(1) ....................20

28 U.S.C. § 1391(b)(2) ....................21

28 U.S.C. § 1391(b)(3) ....................20

28 U.S.C. § 1404(a) ....................1, 21, 24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ....................1, 2, 24

Federal Rule of Civil Procedure 12(b)(3) ....................1, 20, 24

Federal Rule of Civil Procedure 12(f) ....................23, 24

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(2) because it lacks personal jurisdiction over defendant All Web Leads, Inc. All Web Leads is a Texas company that is headquartered in Texas, and it did not place the calls, or cause the calls to be made, that are alleged in the complaint to plaintiffs (one of whom is an Alabama resident). Given that All Web Leads is not "at home" in California, and plaintiffs' claims do not arise from All Web Leads' activities in California, All Web Leads lacks sufficient minimum contacts with California to establish personal jurisdiction here.

Alternatively, the Court should compel plaintiffs to arbitration and stay this case. Although All Web Leads did not make the calls alleged in the complaint, plaintiffs agreed to arbitrate their claims.

The Court should alternatively dismiss this action under Rule 12(b)(3) for improper venue or transfer the case under 28 U.S.C. § 1404(a). Venue is improper here for the same reasons the Court lacks personal jurisdiction. However, the Western District of Texas has jurisdiction over All Web Leads and transfer to that district favors the convenience of the parties and witnesses, and the interests of justice. Indeed, one of the plaintiffs is located in nearby Alabama.

As a final alternative, the Court should strike plaintiffs' class claims because plaintiffs contractually agreed to forego pursuing them.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER ALL WEB LEADS

### A. Facts Establishing Lack of Personal Jurisdiction

#### i. Plaintiffs' Allegations

Plaintiffs are Alabama and California residents allegedly on the Do Not Call Registry. (ECF No. 1, ¶¶ 7, 8 23, 26.) Brumfield received autodialed calls to her

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

phone from the number 951-267-6177 on January 4, 5, 7, and 25, 2022, and answered three of them. (ECF No. 1, ¶¶ 24–27.) Williams received prerecorded calls from the number 334-617-5646 on August 30 and 31, 2022, and September 9 and 27, 2022, answered one call, "and was met with an artificial voice that said it was calling from insurancequotes.com and wanted to talk to her about Medicare benefits." (Id., ¶¶ 28–32.) Plaintiffs assert All Web Leads violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227(c)(5) and 227(b)(1)(A) by making these calls. (Id., ¶¶ 37–38, 50–63.)

**ii. <u>All Web Leads, Inc.</u>**

All Web Leads is an insurance distribution technology business that matches consumers searching online for insurance with licensed agents looking for customers. (Declaration of William R. Daniel ("Daniel Decl."), ¶ 2.) It is a Texas limited liability company with its principal place of business in Austin, Texas. (Id., ¶¶ 3–5; *see also* ECF No. 1, ¶ 9.) It is not licensed or regulated by any California government agency, and it does not own, use, or possess any real estate, offices, property, assets, telephone listings, mailing addresses, bank accounts, or any other assets in California. (Daniel Decl., ¶¶ 4–5.) All of All Web Leads' documents and witnesses that might be relevant to this action are located in Texas. (Id., ¶ 6.)

All Web Leads does not make any prerecorded phone calls or phone calls using an artificial voice, and did not do so in 2022 when plaintiffs allege they were called. (Id., ¶ 8.) All Web Leads has never owned or used the phone numbers plaintiffs allege called them, and did not call or direct anyone to call plaintiffs on the dates they allege. (Id., ¶¶ 9–12.)

**B. <u>Legal Standard</u>**

Defendants seek dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where defendants seek dismissal on this basis, plaintiffs bear the burden to establish personal jurisdiction through admissible evidence rather than just

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

"simply rest[ing] on the bare allegations of [their] complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Personal jurisdiction is established either through general (or "all purpose") jurisdiction, *i.e.*, where a defendant is "at home," or specific (or "case-linked") jurisdiction, which is based on the defendant's contacts with the forum, *i.e.*, "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017).

To determine whether a forum has specific jurisdiction over a defendant in a given case, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the ***defendant's conduct connects him to the forum in a meaningful way***." *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added). The plaintiff's injury "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State" and the plaintiff's claims arise out of that specific contact the defendant had with the state. *Id.* ("mere injury to a forum resident is not a sufficient connection to the forum"); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (affirming dismissal for lack of specific jurisdiction where defendant's only contacts with the state had no relation to plaintiff's claims). Thus, defendant's contacts with the forum must give rise to plaintiff's claims; otherwise personal jurisdiction is lacking. (*Id.*)

Plaintiffs cannot show that either general or specific jurisdiction exists here.

## C. Argument

### i. No General Jurisdiction Exists Over All Web Leads

As plaintiffs acknowledge, All Web Leads is "a Texas company whose headquarters are in Austin, Texas." (ECF No. 1, ¶ 9; *see also* Daniel Decl. at ¶ 3.) Therefore, All Web Leads is not "at home" in California. *Bristol-Myers Squibb Co.*, 582 U.S. at 262.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Further, a non-resident corporate defendant is only subject to general jurisdiction in a foreign state if its contacts with that state are so "continuous and systematic" that it is "*essentially* at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (emphasis added). Plaintiffs have not—and cannot—establish that All Web Leads' contacts with California are so "continuous and systematic" that it is "essentially at home" in California. Plaintiffs have not alleged any such contacts that All Web Leads has with California, and All Web Leads has none including because it has no real estate here and does not use any. (Daniel Decl., ¶¶ 3–5.) Accordingly, general personal jurisdiction over All Web Leads is lacking. *Bauman*, 134 U.S. at 761; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 415–416 (1984) (no general jurisdiction where defendant did not have a place of business in the forum state and had never been licensed to do business in the forum state); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1003–04, 1010 (N.D. Cal. 2020) (dismissing for lack of personal jurisdiction where the defendant was neither incorporated nor had its principal place of business in California).

**ii. <u>No Specific Personal Jurisdiction Exists Over All Web Leads</u>**

If no general personal jurisdiction exists then plaintiffs must establish specific personal jurisdiction exists to avoid dismissal. Specific personal jurisdiction exists only if all of these three elements are satisfied: (1) the foreign defendant does some act by which it purposefully avails itself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws; (2) ***plaintiffs' claims arise out of or result from the foreign defendant's forum-related activities***; and (3) the exercise of jurisdiction would be reasonable. *Omeluk*, 52 F.3d at 270 (affirming dismissal for lack of specific jurisdiction where defendant's only contacts with the state had no relation to plaintiff's claims) (emphasis added); *Bristol-Myers*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Squibb Co.*, 582 U.S. at 260–262. Plaintiffs bear the burden of satisfying the first two elements; if they do, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Plaintiffs have not—and cannot—establish any of the elements required to support the exercise of specific jurisdiction here. Williams cannot establish personal jurisdiction over All Web Leads because she is an Alabama resident; All Web Leads is a Texas company; All Web Leads did not call her or cause her to be called; and plaintiffs allege no facts tying Williams' claims and allegations to California. (ECF No. 1, ¶¶ 8–9; Daniel Decl., ¶¶ 3, 11–12.)

Likewise, Brumfield's claims cannot establish personal jurisdiction because All Web Leads did not make or direct anyone to make the calls she alleges she received and upon which she bases her claims. (Daniel Decl., ¶¶ 9–10). As such, her claim does not arise out of anything All Web Leads did in California so personal jurisdiction is lacking. *Omeluk*, 52 F.3d at 270. Given that there is no connection between Brumfield's claims and California that could support personal jurisdiction over All Web Leads, dismissal for lack of personal jurisdiction is lacking under Supreme Court and Ninth Circuit precedent. *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (noting specific or "case-linked" jurisdiction is based on "an affiliation between the forum and the underlying controversy"); *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."); *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023) ("a claim must arise out of or relate to a forum contact in order for a court to exercise specific personal jurisdiction"); *Omeluk*, 52 F.3d at 270 (affirming dismissal for lack

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

of specific jurisdiction where defendant's only contacts with the state had no relation to plaintiff's claims).

*Winters* is instructive. There, the court found specific personal jurisdiction lacking in a TCPA case where defendant established through a declaration that it did not make the calls underlying the lawsuit and where plaintiff failed to prove any agent made the calls. *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at * 4–5 (D. Ariz. Feb. 11, 2021). Thus, the court found that plaintiffs' declarations stating they received one or more calls from "Defendant or one of its agents" insufficient to establish personal jurisdiction, finding that plaintiffs "failed to meet their burden of establishing specific personal jurisdiction based on an agency theory" because they did not allege any facts showing the defendant had "the right to substantially control its agents' activities, which is a fundamental tenet of an agency relationship." *Id.* at *5–6.

Here, All Web Leads did not call the plaintiffs or direct anyone to do so. (Daniel Decl., ¶¶ 10, 12.) It therefore lacks any contacts with California that give rise to plaintiff's claims. Additionally, there is no third party whose actions could be imputed to All Web Leads under an agency theory to establish personal jurisdiction because All Web Leads has no records of any calls to plaintiffs and did not direct anyone to call them. (*See* id.) But even if such a third party existed, nothing in the complaint establishes that anyone connected to All Web Leads made the calls much less that any agent did so. Rather, Brumfield merely alleges that she spoke with "Defendant's agent" while both plaintiffs allege in conclusory fashion that the calls originated from numbers "owned and operated by Defendant and/or Defendant's agents." (ECF No. 1, ¶¶ 26, 36.) These allegations do not establish that any third party even existed much less that All Web Leads had "the right to substantially control its agents' activities" as required to establish personal jurisdiction under an agency theory. *Winters*, 2021 WL 511217 at *6; *see also*

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Abitbol v. Homelink, LLC*, No. 220CV03654RGKPJW, 2020 WL 5102149, at *3 (C.D. Cal. July 28, 2020) (dismissing defendant for lack of personal jurisdiction in TCPA litigation where defendant failed to establish agency); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *10 (N.D. Cal. Dec. 4, 2017) (TCPA claims dismissed for lack of personal jurisdiction because plaintiffs failed to allege specific facts establishing agency relationship between defendant and the caller); *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (same).

Thus, the Court lacks specific jurisdiction over All Web Leads just as the courts lacked personal jurisdiction over the defendants in *Winters* and the other cases cited above. And, under binding Ninth Circuit precedent, a foreign defendant is usually not subject to local jurisdiction because of "contacts" by an independent contractor in all events. *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1378 (9th Cir. 1981).

**iii. Exercising Personal Jurisdiction Over All Web Leads Would Not Comport with Traditional Notions of Fair Play and Substantial Justice**

Exercising personal jurisdiction over All Web Leads would be unfair and unjust. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987) (holding that in making the "reasonableness" determination, courts must consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief"). Here, the burden imposed on All Web Leads would be significant because all of its documents and witnesses that might be relevant to this action are located in Texas. (Daniel Decl., ¶ 6.) Further, California does not have an interest in pursuing a Texas company for calls it did not make to its citizens. Accordingly, exercising jurisdiction over All Web Leads here

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

would not comport with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 113.

## III. THE COURT SHOULD ALTERNATIVELY COMPEL PLAINTIFFS TO ARBITRATION

Although All Web Leads did not make the calls alleged in the complaint, plaintiffs agreed to arbitrate their claims.

### A. Facts Mandating Arbitration

#### i. Williams' Arbitration Agreements

On January 3, 2022, Williams submitted her phone number on clicksaveauto.com and clicked "GET MY QUOTES" as depicted here:




(Daniel Decl., ¶ 13.) Williams could not have submitted her phone number on the website clicksaveauto.com unless she clicked the "GET MY QUOTES" button

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

depicted above. (Daniel Decl., ¶ 14.) Given the layout of the page above, Williams could not have clicked "GET MY QUOTES" without first seeing the following disclosure, also depicted above, in blue and dark gray lettering against a white background stating: "By clicking Get My Quote … You also agree to ClickSaveAuto's **Privacy Policy** and **Terms of Service**."

Terms identical to the terms that were hyperlinked at the **Terms of Service** above included an arbitration provision covering "any dispute concerning any aspect of these Terms of Website Use, the Website, or any of our services." (Id., ¶ 15, Ex. A.)

Williams' phone number has also been submitted with the name "Tyrone Williams." (Id., ¶ 17.) Tyrone Williams is Williams' husband. (**Exhibits 1 & 3**.) On January 15, 2022, someone submitted Williams' phone number and zip code with the name "Tyrone Williams" on All Web Leads' website affordable-health-insurance-plans.org and clicked the "Submit" button as depicted below:



(Daniel Decl., ¶ 17.) Williams' number could not have been submitted on the above website unless the person submitting her number clicked the "Submit" button depicted above. (Id., ¶ 18.) Given the layout of the page above, the person who submitted Williams' number could not have clicked "Submit" without first seeing the following disclosure in black lettering against a white background stating: "By clicking Submit … I acknowledge that I have read and understand this website's Terms and Conditions, and I agree to be bound by them."

At that time, the Terms and Conditions hyperlinked in the screenshot above stated at the top of the page "**THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT…THAT WAIVE[S] YOUR RIGHT TO A COURT HEARING OR JURY TRIAL.**" (Daniel Decl., Ex. B.) The terms' arbitration provision covers "[a]ny dispute relating in any way to your visit to, or use of the Website, the Content, the Services, any other products or services offered through the Website, any telephone calls…that you receive from us or from Service Providers, or otherwise related to this Agreement" and "[f]or the avoidance of doubt, **all claims arising under the [TCPA] … shall be considered 'Disputes' that are subject to resolution by binding individual, confidential arbitration.**" (Id.) The terms state "YOU EXPRESSLY AGREE TO SUBMIT TO ARBITRATION ALL DISPUTES RELATING TO ANY…TELEPHONE CALLS YOU RECEIVE FROM OR ON BEHALF OF US OR ANY ENTITY WITH WHOM WE MAY SHARE YOUR TELEPHONE NUMBER." (Id.) As a matter of law, for the reasons set forth below, this bound Williams to arbitration notwithstanding that Tyrone's name was used. (*See* Section III.D.)

**ii. Brumfield's Arbitration Agreement**

Brumfield has used the name "Valerie Mcintire." (**Exhibits 2 & 3**.) On January 14, 2022, someone identifying herself as Valerie Mcintire submitted Brumfield's phone number and clicked "View Rates" as depicted below:

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900



Pretected

Valerie, You Qualify for Major Discounts!

Complete this final step to see how much you save!

Street Address

*********

Email

*********

Phone Number

(___) ___-____

View Rates

By clicking "View Rates", I am providing my electronic signature and giving my express written consent to receive marketing and informational communications regarding insurance and related products via Automatic Telephone Dialing System and artificial and pre-recorded calls, SMS/MMS, and emails from this website and/or one or more of its marketing partners (listed here) at the phone number and/or email address I provide, including wireless numbers, if applicable, even if the number is on a corporate, state, or national Do Not Call list. Consent is not a condition to purchase services or products, and I may revoke my consent at any time. I request you provide my information to these partners so I may obtain their services. Carrier SMS/MMS and data rates may apply. By clicking "View Rates", and submitting this form, I attest that I am 18+ years of age and

View Rates

marketing and informational communications regarding insurance and related products via Automatic Telephone Dialing System and artificial and pre-recorded calls, SMS/MMS, and emails from this website and/or one or more of its marketing partners (listed here) at the phone number and/or email address I provide, including wireless numbers, if applicable, even if the number is on a corporate, state, or national Do Not Call list. Consent is not a condition to purchase services or products, and I may revoke my consent at any time. I request you provide my information to these partners so I may obtain their services. Carrier SMS/MMS and data rates may apply. By clicking "View Rates", and submitting this form, I attest that I am 18+ years of age and agree to the Privacy Policy and Terms & Conditions, including the mandatory arbitration provision and class action waiver contained therein.

(Daniel Decl., ¶ 20.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

All Web Leads is, and was at the time Brumfield accessed the site, among the "marketing partners" listed when users click(ed) "marketing partners (listed here)" in the above screenshot. (Daniel Decl., ¶ 21.)

Brumfield could not have submitted her number on the above page unless she clicked the "View Rates" button. And, given the layout of the page, she would have first seen the following disclosure in black and blue lettering against a white background stating: "By clicking 'View Rates', and submitting this form, I attest that I am 18+ years of age and agree to the Privacy Policy and Terms & Conditions, including the mandatory arbitration provision and class action waiver therein." At the time Brumfield accessed the Pretected site, the Terms & Conditions hyperlinked in the above screenshot, contained an arbitration provision and reiterated:

> **YOU UNDERSTAND THAT YOU WOULD HAVE HAD A RIGHT TO LITIGATE IN A COURT, TO HAVE A JUDGE OR JURY DECIDE YOUR CASE AND TO BE A PARTY TO A CLASS OR REPRESENTATIVE ACTION. HOWEVER, YOU UNDERSTAND AND AGREE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY AND ONLY THROUGH ARBITRATION.**

(Id., Ex. C.)

The terms explicitly state that Service Providers, which are defined as "insurance companies, insurance brokers, insurance agents, discount program representatives and other insurance professionals," are third party beneficiaries to the agreement: "Further, we both agree that all entities with whom we share your telephone numbers, including Service Providers, shall be third party beneficiaries of this Dispute Resolution by Binding Arbitration and Class Action Waiver, and that those entities have the same rights as Company to enforce this arbitration provision." (Id.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**B. Legal Standard**

The Federal Arbitration Act . . . represents a 'liberal federal policy favoring arbitration agreements.'" *Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, there is a "presumption of arbitrability [that] dictates that courts should not deny a motion to compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855, at *3 (N.D. Cal. Mar. 13, 2020) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

"[I]n deciding whether to compel arbitration a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

"When faced with a petition to compel arbitration, the district's court's role is a discrete and narrow one." *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."

*Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512, at *7 (C.D. Cal. Feb. 24, 2012).

### C. Valid Arbitration Agreements Exist

Valid arbitration agreements exist under Ninth Circuit precedent. In *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), users had to click a confirmation button to complete their purchases. *Id.* at 515. The text adjacent to each confirmation button told users that by clicking it, they agreed to the defendants' terms of use, and included a hyperlink to the terms which was offset in bright blue font. *Id.* at 515–16. Considering these features, the Ninth Circuit affirmed the district court's finding that plaintiff consented to arbitration and agreed that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* The notice was conspicuously displayed immediately above or below the button to proceed at each stage of purchasing tickets on the defendants' site and clearly told users that clicking each button would manifest intent to be bound to the terms. *Id.* at 516. Because defendants' websites gave reasonably conspicuous notice of the terms, and the plaintiffs manifested their assent by continuing with their purchases, the Ninth Circuit affirmed that the terms were valid and binding. *Id.* at 517.

Other cases are in accord. In *Patrick v. Running Warehouse, LLC*, the Ninth Circuit affirmed that the plaintiff had notice of and agreed to the defendants' terms because they were hyperlinked in contrasting font, were located immediately below the "Place Order" button, and disclosed to the plaintiff that submitting an order by clicking the "Place Order" button constituted assent to the terms. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). Likewise, the court in *Snow v. Nectar Brand, LLC* held that the plaintiff agreed to the defendant's terms when they were hyperlinked immediately above the "Place Order" button and the plaintiff did not uncheck a box stating that she accepted them. *Snow v. Nectar Brand, LLC*, No.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

2:22-cv-07912-MCS-MRW, 2023 WL 2558544, at *2–3 (C.D. Cal. Mar. 2, 2023). And, applying Ninth Circuit precedent, the court in *Kravets v. Anthropologie, Inc.* found that plaintiff was bound by terms containing an arbitration provision even where hyperlinks were bolded and underlined, but did not use blue or capital letters to indicate they were clickable and the notice stated: "GET FREE SHIPPING NOW *when you sign up for email and texts*." *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712, at *7 (S.D. Fla. June 6, 2022) (applying *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 855–858 (9th Cir. 2022)).

Here, plaintiffs had reasonably conspicuous notice of the terms to which they agreed, and they manifested assent to those terms by proceeding with submitting their numbers on the respective sites. For both plaintiffs, text immediately adjacent to the "Submit," "GET MY QUOTES," and "View Rates" buttons on the sites informed them that by clicking the button they agreed to be bound by the terms. (Daniel Decl., ¶¶13, 17, 20.) On each website, that text featured hyperlinks to the terms which were both underlined and thus distinguished from other text. Like in *Oberstein* and the other cases cited above, a reasonable user would have been able to see the notice and locate the terms. *Oberstein*, 60 F.4th at 516.

Additionally, the processes by which Brumfield and Williams agreed to arbitration do not contain the deficiencies that the Ninth Circuit found in a pre-*Oberstein* decision, *Berman v. Freedom Financial Network LLC*. In contrast to the webpage in *Berman*, which featured notice of the terms in "tiny gray font" that was "so small it is barely legible to the naked eye," and "fail[ed] to clearly denote the hyperlinks," *Berman*, 30 F.4th at 856–57, the websites here provided reasonably conspicuous notice of the terms by featuring the notices adjacent to the "Submit," "GET MY QUOTES," and "View Rates" buttons in easy-to-read text against a white background (Daniel Decl., ¶¶ 13, 17, 20.) Additionally, whereas in *Berman* the "comparatively larger font used in all the surrounding text" and overall design of the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

webpage directed users' attention *away* from the notice, the designs of the webpages here draw users *towards* the notices since they are directly adjacent to the buttons and the places where users submit their phone numbers. (Daniel Decl., ¶¶ 13, 17, 20.)

Moreover, the hyperlinks to the terms in two of the notices were in contrasting blue font and underlined, which distinguished them from the rest of the text in the notices; thus, it was "readily apparent" that the notices contained hyperlinks. *Berman*, 30 F.4th at 857. The hyperlinks in the other notice were also sufficiently distinguished from the rest of the text because they were underlined. *Kaplan v. Athletic Media Co.*, --- F. Supp. 3d ---, No. 23-cv-00229-JST, 2023 WL 8587981, at *1, 3–4 (N.D. Cal. Dec. 8, 2023) (applying *Berman* and holding users had reasonably conspicuous notice of defendant's terms where the terms were hyperlinked in bolded black text, distinguishing it from the surrounding text); *Slaten v. Dick's Sporting Goods, Inc.*, No. 2:23-cv-04861-WLH-MAA, 2024 WL 1136399, at (C.D. Cal. Feb. 2, 2024) (finding hyperlinked terms reasonably conspicuous where underlined and in same font color as surrounding text because underscoring sufficiently "indicat[ed] that they are hyperlinks"); *Kravets*, 2022 WL 1978712, at *7 (applying *Berman* and finding plaintiff bound by terms containing an arbitration provision even where hyperlinks were bolded and underlined but did not use blue or capital letters).

Further, the legal significance of clicking the "Submit," "GET MY QUOTES," and "View Rates" buttons is clear here unlike in *Berman*. The Ninth Circuit noted in *Berman* that a disclosure stating "By clicking the Continue >> button, you agree to the Terms & Conditions" would have been sufficient to bind plaintiff to the terms containing the arbitration provision. *Id*. Here, plaintiffs' notices explicitly conveyed exactly the same message: that clicking the buttons above would constitute agreement to the terms containing the arbitration provisions. (Daniel Decl., ¶¶ 13, 17, 20.) Brumfield's notice also explicitly referenced the arbitration

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

provision contained in the terms: "[b]y clicking 'View Rates', and submitting this form, I attest that I am 18+ years of age and agree to the Privacy Policy and Terms & Conditions, *including the mandatory arbitration provision* and class action waiver contained therein." (Daniel Decl., ¶ 20) (emphasis added).

Accordingly, even under *Berman*—and certainly under *Oberstein* and the other authorities cited herein—valid agreements to arbitrate exist between All Web Leads and each plaintiff.

### D. Williams is Bound to Arbitration Under All Web Leads' Agreement

Although Williams' number was submitted under the name "Tyrone Williams" in one instance, Williams is bound by the agreement. She either submitted her number herself on this site under the name "Tyrone," and is thus directly bound to arbitrate under its terms. Alternatively, she is a third-party beneficiary to the agreement.

Under Texas law—which applies here pursuant to the agreement (*see* Daniel Decl. Ex. B)—non-signatories are bound to arbitration agreements where they are third-party beneficiaries of the contract, *i.e.*, where the contracting parties intended to directly benefit the non-signatories and the intent to make them third-party beneficiaries is evidenced in the contract. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F. 3d 1069, 1074–76 (5th Cir. 2002); *Martin v. Orbital Energy Grp., Inc.*, No. 3:22-CV-1968-B, 2023 WL 4533926, at *2 (N.D. Tex. July 12, 2023).

Williams is a third-party beneficiary of the arbitration agreement with All Web Leads because the person who submitted her number on that site entered the agreement to enable Williams to receive insurance information for her benefit. Further, All Web Leads' terms evidence the intent for non-signatories to be third-party beneficiaries of the agreement, as the terms explicitly state that "***all claims*** **arising under the [TCPA] … shall be considered 'Disputes' that are subject to**

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**resolution by binding individual, confidential arbitration**," which includes claims by non-signatories. (Daniel Decl., Ex. B) (emphasis added). The terms further state that all disputes relating to any telephone calls received at the phone number submitted on All Web Leads' site are subject to arbitration. (Id.) Thus, even if Williams did not submit her number on All Web Leads' website herself, she is bound by the arbitration agreement as a third-party beneficiary. *Gaskamp*, 280 F. 3d at 1074–76; *Martin*, 2023 WL 4533926, at *2.

California law mandates the same result. California law binds non-signatories to arbitration agreements where the parties intended to make them third-party beneficiaries, which is "gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Epitech, Inc. v. Kann*, 204 Cal. App. 4th 1365, 1371–72 (2012).

Additionally, non-signatories with a "pre-existing relationship" to one of the parties to the agreement may be bound to arbitrate where it is equitable to do so. *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069–70 (2008). As Tyrone is Juanita Williams' husband (**Exhibit 1 & 3**), Williams is bound to arbitration under All Web Leads' terms. *Epitech, Inc.*, 204 Cal. App. 4th at 1070 (A spousal relationship is recognized as a "preexisting relationship" for purposes of compelling a nonsignatory to arbitrate); *Chan v. Charter Communs. Holding Co.*, No. EDCV 15-0886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) ("an arbitration clause often applies to the spouse [] of the signatory.").

### E. Plaintiffs' Claims Fall Squarely Within the Arbitration Agreements' Scope

When an agreement contains an arbitration clause, a presumption of arbitrability applies, and doubts regarding whether the arbitration clause applies to the particular claims at issue should be resolved in favor of coverage. *AT & T Techs v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The presumption is

particularly strong when the arbitration clause is broad. *Id.* Thus, courts in this circuit have held that the presumption in favor of arbitration applies unless it is rebutted by the language of the agreement at issue. *Capital Grp. Commc'ns Inc. v. Xedar Corp*, No. C–13–01793 EDL, 2013 WL 4013711, at *2–3 (N.D. Cal. Aug. 5, 2013); *see also Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1044 (9th Cir. 2009).

Where the presumption of arbitrability applies, the court "can only deny arbitration if it can be said 'with positive assurance' that the dispute is 'not susceptible of an interpretation' that would cause it to fall within the arbitration clause." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 561 (9th Cir. 2008) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Additionally, arbitration clauses that broadly apply to claims "arising out of or relating to" the agreement are interpreted to cover extracontractual disputes between the parties. *Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 659 (2015).

Plaintiffs' claims fall squarely within the scope of the arbitration provisions at issue. As shown in the screenshot above, when Williams submitted her number on clicksaveauto.com, she agreed to the site's terms which broadly cover "any dispute concerning any aspect of these Terms of Website Use, the Website, or any of our services." (Daniel Decl., Ex. A.)

Additionally, All Web Leads' arbitration agreement applies to "[a]ny dispute relating in any way to your visit to, or use of the Website, the Content, the Services, any other products or services offered through the Website, any telephone calls, emails, or text messages that you receive from us or from Service Providers, or otherwise related to this Agreement" and explicitly states that she must arbitrate TCPA claims relating to calls she received at the number submitted on that site. (Id., Ex. B.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Likewise, Brumfield's arbitration agreement broadly covers "[a]ny dispute relating in any way to your visit to, or use of the Website, the Content, the Services, any other products or services offered through the Website, any telephone calls…you receive from us or from Service Providers, or otherwise related to this Agreement." (Daniel Decl., Ex. C.) It applies here because when she entered the agreement, she gave her consent to be contacted by Pretected's "marketing partners," which includes All Web Leads, and the site's terms explicitly state that "Service Providers" (which includes insurance companies like All Web Leads) are third-party beneficiaries with rights to enforce the agreement. (Daniel Decl., Ex. C.)

Accordingly, binding arbitration agreements exist which cover plaintiffs' claims and so the Court should compel plaintiffs to arbitration and stay this action. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) ("The federal case must be stayed while the parties proceed to arbitration") (citing 9 U.S.C. § 3).

## IV. ALTERNATIVELY, THE COURT SHOULD DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

In civil actions, venue is proper in: "(1) a judicial district in which the defendant resides …; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …; or (3) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Courts may dismiss actions for improper venue. Fed. R. Civ. P. 12(b)(3).

Here, the Court should dismiss this lawsuit for improper venue for the same reasons that the Court should dismiss All Web Leads for lack of personal jurisdiction. *See* 28 U.S.C. § 1391(b); (Daniel Decl., ¶¶ 3–5, 8–12.) All Web Leads does not reside in this judicial district so 28 U.S.C. § 1391(b)(1) does not apply. (Daniel Decl., ¶¶ 3, 5.) Likewise, 28 U.S.C. § 1391(b)(3) does not apply because

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

plaintiffs can sue All Web Leads in Texas if they have grounds to do so. And, 28 U.S.C. § 1391(b)(2) does not apply because none of the events (calls) giving rise to the complaint occurred here in that All Web Leads did not call Brumfield as alleged in the complaint while Williams is an Alabama resident who does not allege that she received the calls in California (and All Web Leads did not call her either). (Daniel Decl., ¶¶ 8–12; *see also* ECF No. 1, ¶ 8.)

Alternatively, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Where a party moves to transfer an action to another venue, the moving party "must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Jackson v. Euphoria Wellness, LLC*, No. 3:20-CV-03297-CRB, 2020 WL 5366419, at *8 (N.D. Cal. Sept. 8, 2020). In determining whether transfer is appropriate, courts may consider a variety of factors, including "the respective parties' contacts with the forum," "the contacts relating to the plaintiff's cause of action in the chosen forum," "the differences in the costs of litigation in the two forums," and "the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498–99 (9th Cir. 2000).

If the Court does not dismiss this action for improper venue, it should transfer the action to the Western District of Texas. That district has personal jurisdiction over All Web Leads because All Web Leads is a Texas company with its principal place of business in Austin, Texas, which is within that district. (*See* Daniel Decl., ¶ 3.) Therefore, the action could have been brought in that district and it is a proper venue for this action. *Jackson*, 2020 WL 5366419, at *8.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Additionally, balancing the relevant factors favors transfer to the Western District of Texas. First, convenience of witnesses is "often considered the most important factor when deciding a motion to transfer" and courts in the Ninth Circuit have consistently found this factor favors transfer where the defendants' employees who are most familiar with the claims at issue reside where the defendant is headquartered. *Mina v. Red Robin Int'l, Inc.*, No. CV-18-9472-PSG (GJSx), 2020 WL 4037163, at *2 (C.D. Cal. Mar. 3, 2020) (convenience of witnesses favored transfer where employees with knowledge relating to plaintiffs' claims were located near defendant's headquarters); *Neff v. Towbin Dodge, LLC*, No. 2:20-CV-00261-JAM-DMC, 2020 WL 6802188, at *3 (E.D. Cal. Nov. 19, 2020) (granting motion to transfer where defendant's relevant witnesses were based where defendant operates, and plaintiff did not claim that the original venue was convenient for any other witness besides himself).

Here, the convenience of the parties and their witnesses favors such transfer because All Web Leads is located in Texas and its relevant witnesses are based there. (Daniel Decl., ¶¶ 3–6.) Additionally, Williams has already demonstrated consent to litigate her claims in California which is much farther away compared to Texas. And, given that potential class plaintiffs will come from all over the country, any alleged convenience for the named plaintiffs is accorded less weight. *Mina*, 2020 WL 4037163, at *2.

Second, because All Web Leads' documents and witnesses relevant to this case are located in Texas, the costs of litigating the case and the ease of access to sources of proof also favor transfer to Texas for both parties. *Jones*, 211 F. 3d at 498–99; *Neff*, 2020 WL 6802188, at *3 (noting that "[w]hile[] developments in electronic conveyance have reduced the cost of document transfer somewhere, costs of litigation can still be substantially lessened if the venue in which most of the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

documentary evidence is stored" and that "litigation costs are usually reduced when the venue is located near the most witnesses expected to testify").

Third, transfer of venue to All Web Leads' home state promotes the interests of justice because Texas "has a significant local interest in having a dispute involving a company headquartered in its state decided at home." *Mina*, 2020 WL 4037163, at *4.

Finally, All Web Leads has no contacts with California under the facts alleged in the complaint. *Jones*, 211 F. 3d at 498–99 (courts consider "the respective parties' contacts with the forum," and "the contacts relating to the plaintiff's cause of action in the chosen forum," in considering transfer of venue). Courts within the Ninth Circuit have transferred venue in TCPA cases where the defendant's home state "has the most contacts relating to Plaintiff's cause of action," and the only contacts related to the cause of action in the original venue were "that plaintiff is a resident of [the] district and allegedly received the communications [there]." *Neff*, 2020 WL 6802188, at *3; *see also Joseph v. TrueBlue, Inc.*, No. 2:14-CV-0316-SMJ, 2014 WL 6908968, at *3 (E.D. Wash. Dec. 9, 2014) (transferring a TCPA case where the text message alerts that supposedly violated the TCPA originated from the lead defendant's headquarters in Tacoma).

## V. <u>THE COURT SHOULD ALTERNATIVELY STRIKE PLAINTIFFS' CLASS CLAIMS</u>

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In deciding a motion to strike, courts may consider materials outside of the pleadings. *Marco Holding Co. v. Lear Siegler, Inc.*, 606 F. Supp. 204, 213 (N.D. Ill. 1985) ("[I]f matters outside the pleadings are presented and considered, especially those testing the legal sufficiency of a defense, a Rule 12(f) motion can be transformed into a motion testing the factual and evidentiary, as well as the legal, basis for the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

challenged pleading and would serve much the same function as a motion for summary judgment") (citing C. Wright & A. Miller, 5 Federal Practice and Procedure, § 1380 at 789 (1969)).

Here, the terms to which plaintiffs agreed containing arbitration provisions also contain class action waivers, and plaintiffs waived their class claims in the same way they agreed to arbitration. (Daniel Decl., Ex. A) ("YOU ACKNOWLEDGE AND AGREE THAT…YOU WAIVE ANY RIGHT…TO BRING, JOIN OR PARTICIPATE AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS ACTION SUIT OR MULTI-PARTY ARBITRATION BROUGHT AGAINST US, ANY PERSON RELATED TO US OR A SERVICE PROVIDER USED BY US TO PROVIDE THE SERVICE"); (Id., Exs. B, C) ("**YOU UNDERSTAND THAT YOU WOULD HAVE HAD A RIGHT…TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION. HOWEVER, YOU UNDERSTAND AND AGREE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY.**")

Accordingly, the Court should strike plaintiffs' class allegations. Fed. R. Civ. P. 12(f); *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022) (striking class allegations where Court's review of Terms of Use confirmed terms barred class claims); *Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *7 (N.D. Cal. April 29, 2021) (same).

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of personal jurisdiction under Rule 12(b)(2), or alternatively compel plaintiffs to arbitration and stay the case pending the outcomes of the arbitrations, or dismiss the case for improper venue under Rule 12(b)(3) or transfer venue to the Western District of Texas under 28 U.S.C. § 1404(a), or strike plaintiffs' class claims.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Dated: April 10, 2024

VENABLE LLP

By: /s/ *Ari N. Rothman*
Ari N. Rothman
Allison C. Nelson

*Attorneys for Defendant*
ALL WEB LEADS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

***L.R. 11-6.2 Compliance.*** The undersigned, counsel of record for defendant All Web Leads, Inc. certifies that this brief contains 6,922 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 10, 2024

VENABLE LLP

/s/ *Ari N. Rothman*

By: Ari N. Rothman
Allison C. Nelson

*Attorneys for Defendant*
ALL WEB LEADS, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900