**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride (SBN 297557)
ryan@kazlg.com
2221 Camino Del Rio S.
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Valerie Brumfield & Juanita Williams

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Valerie Brumfield and Juanita Williams, individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

**All Web Leads, Inc,**

Defendant.

**Case No**. 5:24-cv-00038-MRA

**OPPOSITION TO DEFENDANT ALL WEB LEADS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR ALTERNATIVELY, TO COMPEL ARBITRATION AND STAY CASE, OR DISMISS FOR IMPROPER VENUE, OR TRANSFER VENUE, OR STRIKE CLASS CLAIMS**

**Hon. Mónica Ramírez Almadani**

Tables of Contents

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 1
III. STANDARD OF REVIEW .......... 2
A. Federal Rule of Civil Procedure 12(b)(2) .......... 2
IV. ARGUMENT .......... 2
A. This Court has Personal Jurisdiction Over the Parties .......... 2
ii. Specific Jurisdiction .......... 3
a. Purposeful Direction and Availment .......... 3
b. "Arising Out of or Related to" .......... 7
c. Reasonableness .......... 8
iii. General Jurisdiction .......... 9
B. Plaintiffs Never Agreed to Arbitrate Their Claims Against Defendant .......... 10
C. Venue is Proper .......... 11
D. Plaintiffs Properly Alleged Class Claims .......... 13
E. Leave to Amend .......... 14
V. CONCLUSION .......... 14

KAZEROUNI LAW GROUP, APC

# Table of Authorities

**Cases**


*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......................................................................... 10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017)............................................................. 4

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir 2021)................................................................. 3

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003)........................................................... 14

*Brown v. Stored Value Cards, Inc.*,
2022 U.S. App. LEXIS 35402 (9th Cir. 2022)..................................... 11

*Calder v. Jones*,
465 U.S. 783 (1984) ............................................................................ 3

*Cf. Nichols v. Guidetoinsure, LLC*,
2024 U.S. Dist. LEXIS 68367 (N.D. Cal. April 15, 2024) ..................... 4

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011).............................................. 13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ 9

*Davis v. Cranfield Aero. Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) .......... 4

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......... 12

*Doe v. Unocal*,
248 F.3d 915 (9th Cir. 2001) .......... 2

*Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*,
103 F.3d 888 (9th Cir. 1996) .......... 2

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 14

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. (2021) .......... 3, 9

*Gaines v. AT&T Mobility Servs., LLC*,
424 F. Supp. 3d 1004 (S.D. Cal. 2019) .......... 13

*Gillespie v. Prestige Royal Liquors Corp.*,
183 F. Supp. 3d 996 (N.D. Cal. 2016) .......... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 3

KAZEROUNI LAW GROUP, APC

*Herrera v. Cathay Pac. Airways Ltd.*,
2024 U.S. App. LEXIS 5763 (9th Cir. 2024) .................................................. 10

*Impossible Foods Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023) ........................................................................ 8

*In re Honest Co.*,
343 F.R.D. 147 (C.D. Cal. 2022) .................................................................. 13

*Jackson v. Euphoria Wellness, LLC*,
2020 U.S. Dist. LEXIS 163567 (N.D. Cal. Sept. 8, 2020) ................................. 4

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ........................................................................ 12

*Komaiko v. Baker Techs., Inc.*,
2020 U.S. Dist. LEXIS 70162 (N.D. Cal. April 20, 2020) ................................ 4

*Learjet, Inc. v. Oneok, Inc.*,
715 F.3d 716 (9th Cir. 2013) .......................................................................... 3

*Luna v. Shac, LLC*,
2014 U.S. Dist. LEXIS 96847 (N.D. Cal. July 14, 2014) .................................. 4

*Monastiero v. Appmobi, Inc.*,
15 F. Supp. 3d 956 (N.D. Cal. 2014) ............................................................. 11

KAZEROUNI LAW GROUP, APC

*Moser v. Health Ins. Innovations, Inc.*,
2018 U.S. Dist. LEXIS 3237 (S.D. Cal. Jan. 5, 2018) ........................................ 4

*Munoz v. Earthgrains Distrib., LLC*,
2023 U.S. Dist. LEXIS 162846 (S.D. Cal. Sept. 13, 2023) .............................. 11

*Murphy v. Schneider National Inc.*,
362 F.3d 1133 (9th Cir. 2003) ........................................................................ 12

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......................................................................... 2

*RDF Media Ltd. v. Fox Broad. Co.*,
372 F. Supp. 2d 556 (C.D. Cal. 2005) ............................................................ 13

*United States v. City of Redwood*,
640 F.2d 963 (9th Cir. 1981) .......................................................................... 14

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ........................................................................................ 12

*Will Co. v. Ka Yeung Lee*,
47 F.4th 917 (9th Cir. 2022) .............................................................................. 2

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .............................................................................. 3

**Statutes**

28 U.S.C. § 1391(b)(2) ..................................................................................... 11

KAZEROUNI LAW GROUP, APC

28 U.S.C. § 1404(a) .......... 12
47 U.S.C. § 227 *et seq.* .......... 1

**Rules**

Fed, R. Civ. P. 4(k)(2) .......... 2
Fed. R. Civ. P. 12(f) .......... 13
Fed. R. Civ. P. 12(b)(2) .......... 1, 2
Fed. R. Civ. P. 12(b)(3) .......... 1
Fed. R. Civ. P. 15(a)(2) .......... 14

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## I. INTRODUCTION

Plaintiffs Valerie Brumfield and Juanita Williams ("Plaintiffs") hereby responds to All Web Leads, Inc.'s ("Defendant") motion to dismiss motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively, to compel arbitration and stay case, or dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or transfer venue, or strike class claims. (ECF No. 17). Plaintiffs brought claims against Defendant for violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq*. Plaintiffs brought these claims against Defendant due to a series of telemarketing phone solicitations that each Plaintiff endured as a result of Defendant's actions.

Defendant argues that (1) this Court does not have Personal Jurisdiction; (2) Plaintiffs should be compelled to arbitrate their claims; (3) venue is improper; and (4) Plaintiffs waived their ability to pursue class action. As will be demonstrated below, these arguments do not hold water. Therefore, this Court has personal jurisdiction, Plaintiffs' complaint should not be dismissed, and Plaintiff should not be compelled to arbitrate these claims.

## II. FACTUAL BACKGROUND

Notwithstanding Plaintiff Brumfield's registration on the National Do Not Call Registry, Defendant called her *eight times* between January 4, 2022, and January 25, 2022. (Compl. ¶¶ 24-27). Defendant called Plaintiff Brumfield with a caller ID displaying the number (951) 267-6177. (*Id.*) During the fourth phone call, Plaintiff Brumfield explicitly asked Defendant to stop calling her. (*Id.* at ¶ 26).

On the other hand, Defendant called Plaintiff Williams *four times* between August 30, 2022, and September 27, 2022. (*Id.* at ¶¶ 29-32). Furthermore, the phone calls were all prerecorded messages from a caller ID displaying the number (334) 617-5646. (*Id.*) Plaintiff Williams has been registered on the National Do Not Call Registry since August 11, 2022. (*Id.* at ¶ 28). On the last prerecorded call, Plaintiff

Williams "was met with an artificial voice that said it was calling from insurancequote.com[1] and wanted to talk to her about Medicare benefits." (*Id*. at ¶ 32).

## III. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(2)

Rule 12(b)(2) requires that the Court have personal jurisdiction over the parties. Fed. R. Civ. P. 12(b)(2). Although "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate…[u]ncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 921 (9th Cir. 2022). Demonstrating personal jurisdiction "requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001).

## IV. ARGUMENT

### A. This Court has Personal Jurisdiction Over the Parties

This Court has both general jurisdiction and specific jurisdiction in accordance with Due Process because the Defendant's nationwide online insurance generating platform markets to individuals in California. Furthermore, the offending actions occurred in California as to Plaintiff Brumfield.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co.*, 453 F.3d at 1154 (citing *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). "[B]oth the California long-arm statute and Rule 4(k)(2)—what is often referred to as the federal

---

[1] This website is meant to spell insurancequotes.com rather than insurancequote.com. Plaintiff realizes and acknowledges the typo here. This is important, as Defendant directly runs the website insurancequotes.com.

long-arm statute—require compliance with due process requirements." *Id.* at 1155. "The Supreme Court's due process precedents have 'recognized two kinds of personal jurisdiction: general and specific jurisdiction.'" *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021) (cleaned up)).

**ii. Specific Jurisdiction**

This Court has specific jurisdiction over Defendant because, among those reasons mentioned above, Defendant's actions took place in this jurisdiction, where Plaintiff Brumfield resides.

Specific jurisdiction "covers defendants less intimately connected with a State" when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 592 U.S. 351 at 359 (internal quotations omitted). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted & cleaned up). Specific Jurisdiction exists when (1) the non-resident defendant purposefully directed his activities or consummated some transaction with the forum or resident thereof; (2) the claim arose out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013).

**a. Purposeful Direction and Availment**

The Ninth Circuit typically analyzes contract claims under "purposeful availment" and tort claims under "purposeful direction." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir 2021). Under *Calder v. Jones*, "a defendant purposefully directs its activities toward the forum when the defendant has (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing



KAZEROUNI LAW GROUP, APC

harm that the defendant knows is likely to be suffered in the forum state." *Id*. at 980. (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) "Because 'TCPA actions are essentially tort claims,' purposeful direction analysis is appropriate here." *Jackson v. Euphoria Wellness, LLC*, 2020 U.S. Dist. LEXIS 163567, at *10 (N.D. Cal. Sept. 8, 2020) (citation omitted). Nevertheless, "when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

Courts have routinely found the second and third prongs of purposeful direction met when the offending calls are sent to a California area code. *Id*. at *14-15; *see Komaiko v. Baker Techs., Inc.*, 2020 U.S. Dist. LEXIS 70162, at *19 (N.D. Cal. April 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the Calder test are satisfied when defendants contact numbers with area codes associated with that state"); *Luna v. Shac, LLC*, 2014 U.S. Dist. LEXIS 96847, at *11 (N.D. Cal. July 14, 2014) ("where [defendant] intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, [defendant] expressly aimed its conduct at California" and "knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California"); *Moser v. Health Ins. Innovations, Inc.*, 2018 U.S. Dist. LEXIS 3237, at *11 (S.D. Cal. Jan. 5, 2018) ("The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code"); *Cf. Nichols v. Guidetoinsure, LLC*, 2024 U.S. Dist. LEXIS 68367, at *6-7 (N.D. Cal. April 15, 2024) (finding no specific jurisdiction when Defendant presented evidence that Plaintiff submitted an



KAZEROUNI LAW GROUP, APC

online form that included a Virginia area code telephone number because defendant "would not have foreseen that making the phone calls to [plaintiff] would cause harm in California")

Here, Plaintiff Brumfield's phone number is listed with a California area code. Furthermore, Defendant intentionally made telemarketing phone calls to Plaintiff Brumfield such that Defendant purposefully directed activities towards California and purposefully availed itself of the privilege of conducting activities in the forum. First, it must be noted that an underlying tension exists within Defendant's motion. On the one hand, Defendant claims that it "did not make or direct anyone to make the calls" that Plaintiff received, such that Plaintiff's "claim does not arise out of anything [Defendant] did in California." (ECF No. 17, p. 14). On the other hand, Defendant then argues (discussed later) that "someone identifying herself as Valerie Mcintire submitted Brumfield's phone number" to Defendant such that Plaintiff—a California resident—entered into an arbitration agreement with Defendant. *Id*. at pp. 19-21. These two claims cannot be reconciled.

However, what Defendant's arbitration argument actually demonstrates, is that Defendant does *indeed* have significant contacts with California—namely, Defendant actively solicits business in the forum state. One only need look to Defendant's own website to discover that Defendant's privacy policy contains a California residents' rights disclosure with three separate webform links for "California Consumer options."[2] Furthermore, the website provides that between July 6, 2020, and July 6, 2021, "the number of requests to opt out" pursuant to the California Consumer Privacy Act disclosure, shows 68,629 by email and 1,243,750 by phone.[3] These numbers are nothing to scoff at. It should come as no surprise then, that since 2020—in contradiction to Defendant's Declaration (ECF No. 17-4, ¶

[2] https://awl.com/privacy/; (Last accessed 6/21/2024)
[3] *Id*.



KAZEROUNI LAW GROUP, APC

4)—Defendant has been registered with the State of California Department of Justice as a data broker.[4]

Furthermore, Defendant advertises itself as a nationwide business.[5] On Defendant's "About Us" section of its website, Defendant describes itself as "an insurance distribution technology business focused on personal lines *in the United States*."[6] This self-described "online business…has expanded to encompass *all personal lines of insurance in the U.S.*"[7] Defendant goes on to explain that it "is comprised of a customer acquisition marketing division…known as 'InsuranceQuotes'" and cites the website "InsuranceQuotes.com."[8] Additionally, on Defendant's hiring page, Defendant claims that it "help[s] [its] customers acquire customers for *the US insurance industry*."[9] This claim is placed on the bottom of every job description on its website. Defendant even appears to recruit affiliates from all US states, including California.[10] The affiliate program link notes that Defendant "works with every major insurance carrier in the industry and has thousands of direct agents…[Defendant] powers many of the leading insurance comparison sites in the world."[11]

Most notably, in 2015, Genstar Capital—a California-based private equity firm—purchased Defendant.[12] Presently, Genstar Capital encompasses half of Defendant's Board of Directors, including Ryan Clark, Genstar's President and Managing Director, and Ben Marshall, Director of Genstar Capital.

These contacts notwithstanding, Plaintiff Brumfield properly alleged that

---

[4] https://oag.ca.gov/data-broker/registration/186615; (Last accessed 6/21/2024)
[5] https://awl.com/about-us/; (Last accessed 6/21/2024)
[6] *Id*. (emphasis added).
[7] *Id*. (emphasis added).
[8] *Id*.
[9] https://awl.com/careers/; (Last accessed 6/21/2024)
[10] https://secure.allwebleads.com/affiliate-signup/traffic; (Last accessed 6/21/2024)
[11] *Id*.
[12] https://www.gencap.com/genstar-capital-and-great-hill-partners-announce-acquisition-of-all-web-leads-by-genstar/; (Last accessed 6/21/2024)

Defendant is liable for the underlying actions of Plaintiff's claim such that Defendant should have reasonably foreseen being hailed into court in California. Despite Plaintiff Brumfield having received eight phone calls from Defendant. Defendant denies its use of the (951) 267-6177 phone number. (ECF No. 17-4, ¶¶ 9-10). However, Plaintiff's counsel eventually called the number back and discovered the phone number traced back to autoinsurancequotes.com. On that website, the company provided a contact address of 7300 RM 2222 Building 2, Suite 100 Austin, TX 78730. Defendant previously used this address. Additionally, the first line in autoinsurancequotes.com's terms and conditions reads, "[t]he website located at www.autoinsurancequotes.com ('Website') is operated by All Web Leads, Inc[.]" Defendant's business is premised on its abilities to find sales leads for other companies. And as Defendant has already conceded that it obtained Plaintiff Brumfield's phone number, it remains vicariously liable for any calls generated on its behalf. Furthermore, Plaintiff Brumfield's phone number is listed with a California area code. As such, Defendant's actions were expressly aimed at the forum state and Defendant caused harm that the Defendant knew or should have known would be suffered in the forum state.

Had Defendant chosen to not avail itself of California, Defendant could simply remove all California phone numbers from its system. However, Defendant makes no claim that it does not do business in the State of California; rather, Defendant merely alleges that it does not have physical assets in the State of California. A national online business should not be able to escape jurisdictional duties when they have harmed a citizen of that State.

**b. "Arising Out of or Related to"**

For the second prong of specific jurisdiction, "[a] single contact with the forum state may be sufficient to support jurisdiction if the action 'arise[s] out of that particular purposeful contact of the defendant with the forum state.'" *Impossible*



KAZEROUNI LAW GROUP, APC

*Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1091 (9th Cir. 2023) (internal citations omitted). "Conversely, a stronger showing of purposeful contacts with the forum state 'will permit a lesser showing' of relatedness to the litigation." *Id*.

Here, it's undeniable that the claim arose out of or relates to Defendant's activities in California. As discussed above, Defendant has significant contacts with California and does business with consumers from California. Moreover, Defendant makes no efforts to steer clear of California consumers. Additionally, Defendant called Plaintiff Brumfield, whose phone number is listed with a California area code. Thus, Defendant or Defendant's agents' phone calls to Plaintiff Brumfield arose due to its activities in the forum state, i.e. reaching out to consumers to find sales leads and sell insurance. This is the natural consequence of Defendant's business operations. Because even if Defendant did not directly make the phone calls, Defendant clearly collected—as Defendant admitted—and sent over the phone numbers to agents of Defendant who did.

**c. Reasonableness**

Courts analyze reasonableness under seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Impossible Foods Inc.*, 80 F.4th at 1099.

Here the factors weigh in favor of Plaintiff. Defendant makes two arguments against reasonableness: (1) that "all of its documents and witnesses…are located in Texas" and (2) "California does not have an interest in pursuing a Texas company for calls it did not make to its citizens." (ECF No. 17, p. 16). To its first point,

KAZEROUNI LAW GROUP, APC

Defendant purports to be an online business. While there may be witnesses located in Texas, the prevalence of web-based video conferencing should alleviate problems related to potential depositions and court hearings. Similarly, documents—as Defendant has already demonstrated in its declaration and accompanying exhibits—should be easily transferrable online. Next, California *does* have an interest in pursuing Defendant for calls that it made to Plaintiff Brumfield. Defendant is essentially proclaiming its innocence, despite its claim being a disputed issue of fact. This should only factor into the reasonableness analysis insofar as it demonstrates California's interest in adjudicating disputes over harms that occur to its citizens.

Ultimately, Defendant "purposefully interjected" itself into the forum state through its normal course of business dealings. Defendant maintains significant contacts with the forum state and harmed one of its citizens. Accordingly, Defendant has minimum contacts with California so as to not harm "traditional notions of fair play and substantial justice."

**iii. General Jurisdiction**

Alternatively, this Court has general jurisdiction over Defendant because Defendant owns and operates a nationwide online insurance marketing platform that reaches consumers in California, regularly advertises itself as such, and half of Defendant's board members are encompassed by members of Genstar Capital, a California private equity firm with a major stake in Defendant.

Courts have general jurisdiction "when a defendant is 'essentially at home' in the State." *Ford Motor Co.*, 592 U.S. 351 at 358. While Courts consider a defendant's principal place of business and place of incorporation as paradigmatic cases of general jurisdiction, the Supreme Court "left open 'the possibility that in an exceptional case' a corporation might also be 'at home' elsewhere." *Id.* at 358-59 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)).

While Plaintiff acknowledges that this is not a paradigmatic case of general

KAZEROUNI LAW GROUP, APC

jurisdiction, it may fall under an "exceptional" case. As discussed above, Defendant's contacts with the state are "continuous and systematic." Defendant takes no effort in preventing California business. Most importantly, however, Defendant had been bought by a California-based private equity firm—Genstar Capital—in 2015. So while Defendant's principal place of business may be located in Texas, its funders and at least half of its board members are based in California. As such, this Court should find that the Court has general jurisdiction over Defendant.

**B. Plaintiffs Never Agreed to Arbitrate Their Claims Against Defendant**

Defendant makes the claim that although it had nothing to do with these phone calls, "plaintiffs agreed to arbitrate their claims." (ECF No. 17, p. 17). This position is untenable. Plaintiffs did not agree to arbitrate any claims. *See* Compl. ¶¶ 34, 53-55, 60-62.

Defendant's alleged contracts with Plaintiffs are not governed by the Federal Arbitration Act ("FAA") for an obvious fact—namely, Plaintiffs never entered into a contract with Defendant.

Section 2 of the FAA provides that:

> "A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof…shall be valid, irrevocable, and enforceable, ***save upon such grounds as exist at law or in equity for the revocation of any contract***[.]" 9 U.S.C. § 2 (emphasis added).

"At this stage of the litigation, we assume that all allegations in the complaint are true." *Herrera v. Cathay Pac. Airways Ltd.*, 2024 U.S. App. LEXIS 5763, at *5 (9th Cir. 2024) (Referring to a pre-answer, Motion to Compel Arbitration). The "saving clause" at the end of section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)





KAZEROUNI LAW GROUP, APC

Thus, "§ 2's saving clause preserves generally applicable contract defenses[.]" *Id*. at 343. Moreover, "[w]ithout an objectively manifested meeting of the minds, no contract exist[s]." *Brown v. Stored Value Cards, Inc.*, 2022 U.S. App. LEXIS 35402, at *3 (9th Cir. 2022) "To determine whether a valid agreement exists, district courts apply applicable state law principles of contract formation." *Munoz v. Earthgrains Distrib., LLC*, 2023 U.S. Dist. LEXIS 162846, at *4 (S.D. Cal. Sept. 13, 2023).

Here, there is no meeting of the minds for either "contract" to be enforceable. Neither Plaintiff Brumfield nor Plaintiff Williams submitted their information on Defendant's websites. Compl. ¶ 34 ("At no point in time did Plaintiffs provide Defendant with their express written consent"). Thus, the parties never entered into any contract. This is, in fact, the issue with the case at hand. Had Plaintiffs provided consent for these calls in the first place, they would not have been harmed.

**C. Venue is Proper**

As previously discussed, venue is proper based on the facts alleged with regards to personal jurisdiction. Defendant's actions directly affected Plaintiff Brumfield such that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2).

Defendant claims that "28 U.S.C. § 1391(b)(2) does not apply because none of the events (calls) giving rise to the complaint occurred here in that [Defendant] did not call Brumfield as alleged[.]" This is a disputed issue of fact that the Plaintiff contests. *See Compl. generally*. The calls associated with Plaintiff Brumfield were traced back to a website that Defendant owned and operated at the time. And as "a 12(b)(3) motion has a dramatic effect on plaintiff's forum choices, the trial court must 'draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.'" (*Monastiero v. Appmobi, Inc.*, 15 F. Supp. 3d 956, 960 (N.D. Cal. 2014) (quoting *Murphy v. Schneider*

KAZEROUNI LAW GROUP, APC

*National Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).

Additionally, transfer of venue would not be in the interests of justice. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (cleaned up). Courts may consider "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1001-02 (N.D. Cal. 2016) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "The defendant must make a *strong* showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added).

Here, Plaintiffs specifically chose to litigate this action in the Central District of California. This choice affected both Plaintiffs, and *both* chose to litigate it in this forum. Furthermore, as explained previously, Defendant *does* have significant contacts in the forum state. While Defendant may be slightly inconvenienced by litigating outside of its home state, the inconvenience is not so high as to warrant a full transfer. Indeed, Defendants must demonstrate a "strong showing of inconvenience" and have not done so. Defendant's proclamation for witness and evidentiary convenience is not justified in a two count TCPA case. In fact,



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

Defendant's declarations and exhibits have proven just that. In our modern environment, the ability to transfer data (especially given the nature of Defendant's business model) is easier than ever. The same holds true for face-to-face video appearances. And while Texas may have some local interest in adjudicating the action, California too has an interest in adjudication when its citizen is harmed.

As Plaintiffs have collectively chosen the forum state for litigation, and the Defendant has not made a strong showing of inconvenience, this Court should deny Defendant's request to transfer venue.

**D. Plaintiffs Properly Alleged Class Claims**

Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike 'are generally regarded with disfavor because of the limited importance of pleading in federal practice,' and 'are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation.'" *In re Honest Co.*, 343 F.R.D. 147, 150 (C.D. Cal. 2022) (citing *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019). Motions to strike may only be granted if the court is "convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Id*. (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Moreover, "the court must view the pleadings in the light most favorable to the nonmoving party." *Id*. (citing *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).

Defendant's entire argument against Plaintiffs' class allegations is premised upon an arbitration agreement for which Plaintiffs have already disputed. Accordingly, the terms of this arbitration clause cannot be held against Plaintiffs without a valid contractual agreement.

**E. Leave to Amend**

Rule 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2)). The Rule goes on to state that "[t]he court should freely give leave when justice so requires." *Id.* The Supreme Court in *Foman v. Davis* stated: In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *See also United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981) ("it is only the extraordinary case in which dismissal is proper"). "Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend" *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Here, the facts show that at the very least, Defendant has minimum contacts with the forum state such that it does not offend traditional notions of fair play and substantial justice. Defendant's entire business model appears predicated upon locating individuals *nationwide* as leads for insurance sales. Moreover, the facts related to Plaintiffs' "consent forms" are contested. Accordingly, it would be unjust to force arbitration on Plaintiffs.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs have properly alleged personal jurisdiction and demonstrated that no arbitration agreement existed between the parties. Furthermore, Plaintiffs have explained that dismissal or transfer based on venue is improper. As such, Plaintiffs respectfully request that this Court deny Defendants motion in its entirety.



KAZEROUNI LAW GROUP, APC

Dated: June 27, 2024

Respectfully Submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Ryan L. McBride*___
Ryan L. McBride Esq.
*Attorneys for Plaintiff*



KAZEROUNI LAW GROUP, APC