**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

VALERIE BRUMFIELD, ET AL.,
Plaintiffs,
v.
ALL WEB LEADS INC.,
Defendant.

Case No. 5:24-cv-00038-MRA-SHK

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND AND DENYING THE MOTION AS TO OTHER REQUESTS WITHOUT PREJUDICE [ECF 17]**

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration and Stay Case, or Dismiss for Improper Venue, or Transfer Venue, or Strike Class Claims. ECF 17. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motion to Dismiss for lack of personal jurisdiction with leave to amend and otherwise **DENIES** the Motion as to Defendant's other requests without prejudice.

# I. BACKGROUND[1]

Plaintiffs Valerie Brumfield ("Brumfield") and Juanita Williams ("Williams") (collectively, "Plaintiffs") filed this consumer class action on January 8, 2024, against Defendant All Web Leads, Inc. ("Defendant"). ECF 1. Brumfield is a resident of Hemet, California. *Id.* ¶ 7. Williams is a resident of Ozark, Alabama. *Id.* ¶ 8. Defendant is a Texas company headquartered in Austin, Texas. *Id.* ¶ 9. Plaintiffs allege violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), based on unsolicited marketing calls that Plaintiffs allege they received from Defendant. *Id.* ¶¶ 1, 2.

Brumfield has been on the National Do Not Call registry since December 2, 2021. *Id.* ¶ 23. On or around January 4, 2022, Brumfield received an autodialed phone call from a caller with the phone number (951) 267-6177. *Id.* ¶ 24. Brumfield rejected the call. *Id.* On January 5, 2022, Brumfield received two additional calls from the same (951) phone number, which she again rejected. *Id.* ¶ 25. On January 7, 2022, she received another call from the same number, which she answered. *Id.* ¶ 26. She informed the agent on the call that she was not interested and not to call her. *Id.* On January 25, 2022, Brumfield received four more calls from the same number, two of which she rejected, and two of which she answered, stating as she had done before that she was not interested. *Id.* ¶ 27. Brumfield was in the Central District of California when she received these calls. *Id.* ¶ 33. Upon information and belief, Defendant made these calls and caused other phone calls to be made to individuals residing within this judicial district. *Id.*

Williams has been on the National Do Not Call registry since August 11, 2022. *Id.* ¶ 28. On or around August 30, 2022, Williams received a prerecorded call from phone

---

[1] The Court describes the alleged facts as set forth in Plaintiffs' Complaint. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the court "take[s] as true all uncontroverted allegations in the complaint." *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F. 4th 852, 858 (9th Cir. 1977). The Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," but "resolve[s] factual disputes in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks and citations omitted).

number (334) 617-5646, which she rejected. *Id.* ¶ 29. On August 31, 2022, and September 9, 2022, Williams received prerecorded calls from the same number, which she also rejected. *Id.* ¶¶ 30-31. On September 27, 2022, Williams received a prerecorded call from the same number, which this time she answered. *Id.* ¶ 32. When she answered, an artificial voice said it was calling from "insurancequote.com" and wanted to talk to her about Medicare benefits. *Id.* ¶ 32. Upon information and belief, Defendant is responsible for making these calls. *Id.* ¶ 59.

Plaintiffs never provided Defendant with their express written consent to be contacted using an artificial or prerecorded voice. *Id.* ¶ 34. Plaintiffs are the subscribers of the phones associated with the numbers that were called. *Id.* ¶ 35. Plaintiffs allege that the phone calls all "trace back to Defendant," because all the phone numbers which called Plaintiffs are owned and operated by Defendant and/or Defendant's agents. *Id.* ¶ 36. Defendant's unsolicited phone calls harmed Plaintiffs by invading their privacy, causing them aggravation, annoyance, inconvenience, and disruption, among other harms. *Id.* ¶ 37. All the calls were non-emergency calls made without regard to whether Defendant had first obtained express permission from the called party. *Id.* ¶ 60. Defendant knew it did not have prior express consent to make these calls and knew or should have known that it was calling using an artificial or prerecorded voice. *Id.* ¶ 62.

Based on these factual allegations, Plaintiffs bring claims on behalf of themselves, and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23. *Id.* ¶ 39. Brumfield alleges a single claim for negligent and willful violations of Section 227(c)(5) of the TCPA. *Id.* ¶¶ 50-56. She seeks to represent a "Federal TCPA DNC Class" defined as:

> All persons within the United States who received two phone calls within a 12 month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant's first call, within the four years prior to the filing of this Complaint.

*Id.* ¶ 40. Williams alleges a single claim for negligent and knowing/willful violations of Section 227(b)(1)(A) of the TCPA. *Id.* ¶¶ 57-63. She seeks to represent a "Federal TCPA Prerecorded Voice Class" defined as:

> All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

*Id.*

On April 10, 2024, Defendant filed the instant Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) or, Alternatively, to Compel Arbitration and Stay Case, or Dismiss for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3), or Transfer Venue, or Strike Class Claims. ECF 17. Plaintiffs oppose. ECF 19. There are no pending pretrial deadlines. Upon the stipulation of the parties, the Court vacated the Scheduling Conference, pending decision on the instant Motion. ECF 23.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal based on lack of personal jurisdiction. When a defendant moves to dismiss for lack of personal jurisdiction, the defendant may submit declarations and other evidence. *CollegeSource, Inc.*, 653 F.3d at 1073 (explaining that the "[the court] may not assume the truth of allegations in a pleading which are contradicted by affidavit") (internal quotation marks omitted). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation and quotations omitted)). The burden for establishing that jurisdiction is proper rests with the plaintiff, who "need only make a prima facie showing of jurisdictional facts."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation and internal quotations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Schwarzenegger*, 374 F.3d at 800. Because California's long-arm jurisdictional statute is "coextensive with federal due process requirements," "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-801; *see* Cal. Civ. Proc. Code § 410.10. Where, as here, a defendant lacks presence within the territory of the forum, due process requires that Defendant have "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Those contacts may be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Alternatively, those contacts may relate to "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted). The Supreme Court has referred to these grounds for personal jurisdiction as "general" and "specific" jurisdiction, respectively. *See, e.g.*, *id.*; *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., at San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

As an initial matter, the Court finds that it lacks ***general jurisdiction*** over Defendant. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG*, 571 U.S. at 137. Plaintiffs recognize that "this is not a paradigmatic case of general jurisdiction," but that "it may fall under an 'exceptional' case" based on "Defendant tak[ing] no effort in preventing California business," and "Defendant hav[ing] been bought by a California-based private equity firm." ECF 19 at 17. But these conclusory allegations are wholly insufficient to

show that Defendant is "essentially at home" in California for purposes of general jurisdiction. Moreover, Plaintiffs fail to cite any authority in support of their position that this an "exceptional case." Rather, their briefing focuses on whether the Court has specific jurisdiction over Defendant, which the Court will now address.

For a court to have ***specific jurisdiction*** over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit follows a three-part "minimum contacts" test. *First*, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" *Schwarzenegger*, 374 F.3d at 802. *Second*, "the claim must be one which arises out of or relates to the defendant's forum-related activities[.]" *Id.* *Third*, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. If the plaintiff succeeds in doing so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Starting with the first prong, courts consider the defendant's "purposeful availment" of or "purposeful direction" towards the forum state. *Schwarzenegger*, 374 F.3d at 802. These are "two distinct concepts." *Id.* Courts "look to the type of claim at issue to determine the applicable analytical approach." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted). Here, there is no dispute that the TCPA claims sound in tort, and therefore the purposeful direction test applies. *See, e.g.*, *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273, *3 (C.D. Cal. 2020) ("Claims for violation of the TCPA

sound squarely in tort and require application of the purposeful direction analysis"). Under the ***purposeful direction*** test, Plaintiffs must show that Defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162-63 (9th Cir. 2023).

Plaintiffs argue that this Court has specific personal jurisdiction over Defendant based on the calls that were made to Brumfield in California. Remarkably, however, Plaintiffs do not address how the Court has personal jurisdiction over Defendant based on calls made to Williams in Alabama, outside the forum state. By not addressing this issue, Plaintiffs have clearly conceded or otherwise waived this argument. Based on the allegations in the Complaint, the Court lacks personal jurisdiction over Defendant based on William's claims. *See, e.g.*, *Vachani v. Yakovlev*, No. 15-cv-04296-LB, 2016 WL 1598668, at *4 (N.D. Cal. Apr. 21, 2016) ("Specific personal jurisdiction subjects a non-resident defendant to a court's power only for claims arising out of the defendant's activity in the forum state.") (citing *Schwarzenegger*, 374 F.3d at 801-02); *Thompson v. Inman*, No. 6:22-cv-01783-MC, 2023 WL 1965403, at *2 (D. Ore. Feb. 13, 2023) (claims based on non-resident defendants' alleged theft in Utah could not give rise to specific personal jurisdiction over defendants in Oregon).

With respect to Brumfield's claims, Plaintiffs argue generally that "Defendant intentionally made telemarketing phone calls to [] Brumfield such that Defendant purposefully directed activities towards California and purposefully availed itself of the privilege of conducting activities in the forum." ECF 19 at 12. However, the bulk of Plaintiffs' argument focuses on Defendant's general contacts with the forum state, not the intentional acts necessary to establish personal jurisdiction. For example, as evidence that Defendant actively solicited business in California, Plaintiffs point to Defendant's website, which purportedly contains a disclosure for California residents with "separate webform links for 'California Consumer options,'" and provides data on the number of requests to "'opt-out' pursuant to the California Consumer Privacy Act." *Id.* Citing to a California

Department of Justice website, Plaintiffs also argue that Defendant has been registered with the California Department of Justice as a "data broker." In addition, they explain that Defendant "advertises itself as a nationwide business," that Genstar Capital—a California-based private equity firm—purchased Defendant in 2015, and that Genstar "encompasses half of Defendant's Board of Directors." *Id.* at 13. But these assertions—unsupported by declarations or other evidence and untethered from the claims in this case—do not show the "intentional act" necessary to establish personal jurisdiction over Defendant for a TCPA violation—namely, that Defendant made unsolicited calls to Brumfield in California or directed a third party to do so.

Under the TCPA, a party may be held liable for making unsolicited calls using automatic dialing systems and prerecorded messages. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041 (9th Cir. 2017). Even where a party did not itself make a call, it may be held vicariously liable for TCPA-violating calls "where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014); *see also Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014) (collecting cases holding that personal jurisdiction based on unsolicited calls is proper where a plaintiff shows that the defendant caused the calls to be made).

Here, Plaintiffs allege in the Complaint that Defendant made the challenged phone calls. *See* ECF 1 ¶¶ 23-27. However, they elaborate on this only in the Opposition to the Motion to Dismiss without providing any declarations or other evidence in support. Specifically, they explain that Plaintiffs' counsel called the number from which Brumfield received the calls at issue and discovered that the phone number "traced back to autoinsurancequotes.com." ECF 19 at 14. That website listed the company address as 7300 RM 2222 Building 2, Suite 100 Austin, TX 78730—an address that Defendant purportedly previously used. *Id.* Additionally, the first line of autoinsurancequotes.com's terms and conditions purportedly states that the website "located at www.autoinsurancequotes.com is operated by All Web Leads, Inc[.]" *Id.*

Defendant disputes it is subject to personal jurisdiction in California and submits a declaration from its Chief Executive Officer, William R. Daniel, confirming, in relevant part, that "All Web Leads does not make any pre-recorded phone calls or phone calls using an artificial voice, and All Web Leads did not do so in 2022 when plaintiffs in this case allege they were called."[2] ECF 17-4 (Declaration of William R. Daniel) at ¶ 8. Daniel explains that, as CEO, he has "knowledge of the types of phone calls All Web Leads makes, and [he] know[s] how to review the records that the company generates, maintains and receives in the ordinary course of its business concerning these phone calls." *Id.* at ¶ 7. Additionally, Daniel explains that All Web Leads never owned or used the phone numbers that Plaintiffs allege were used to call them and did not call *or direct anyone to call* Plaintiffs on the dates they allege. *See id.* ¶¶ 9-12.

To survive a Rule 12(b)(2) motion, Plaintiffs must controvert Defendant's jurisdictional evidence with their own admissible evidence and affidavits. *See, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)). Plaintiffs' bare allegation that a website, autoinsurancequotes.com, is connected to Defendant and called Plaintiff—without any reliable corroboration—does not suffice to refute Defendant's evidence showing that it is not connected to the number that called Brumfield and did not call or direct another to call Brumfield. *See Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *5 (N.D. Cal. 2018) (holding that facts showing some relationship between Defendant and another entity "is not enough" to

[2] On December 5, 2024, Defendant filed a Notice of Errata, informing the Court that this statement in the Daniel's Declaration should instead state that "All Web Leads does not make any prerecorded phone calls or phone calls using an artificial voice, and did not do so in 2022 when plaintiffs allege they were called *except in the limited circumstance to avail All Web Leads of the protections of the Telemarketing Sales Rule concerning abandoned calls.*" ECF 27 at 2. Defendant states that this amendment does not affect or change the outcome of the motion. *Id.* Plaintiffs did not respond to this Notice. The Court agrees that this amendment does not appear to affect resolution of the Motion.

establish an agency relationship where those facts do "not allow the court to infer that Defendant exercises control over the representatives"); *see also Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 WL 5992123, at *10 (N.D. Cal. Dec. 4, 2017) (dismissing a complaint where the plaintiff "allege[d] [a] violation of the TCPA solely on an agency theory, but without pleading facts sufficient to show" an agency relationship). Plaintiffs also fail to allege facts that show that Defendant did or said something to create a reasonable belief that autoinsurancequotes.com had authority to act on behalf of Defendant, *see* Restatement (Third) of Agency § 2.01; *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167-68 (D. Idaho 2011), or that Defendant ratified the acts of the caller by knowingly accepting the benefits of those acts, *see* Restatement (Third) of Agency § 4.01.

Based on the evidence currently before the Court, Plaintiffs have failed to satisfy the first prong of the purposeful direction test, and therefore have not shown that Defendant's "suit-related conduct" created a substantial connection with the forum state. *Walden*, 571 U.S. at 284. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss for lack of personal jurisdiction.

**B. <u>Motion to Transfer Venue</u>**

Defendant argues in the alternative that the Court should dismiss for improper venue or transfer this case to the Western District of Texas, which is the location of Defendant's principal place of business, and therefore where personal jurisdiction over Defendant exists. ECF 17 at 30. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court may transfer a case if: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008). Because it is not certain that Plaintiffs cannot amend the Complaint to

establish personal jurisdiction, the Court finds this request to be premature and **DENIES** it without prejudice.

**C. <u>Motion to Compel Arbitration</u>**

Defendant also moves in the alternative to compel arbitration. The Court need not reach this question, because the Court grants Defendant's Motion to Dismiss for lack of personal jurisdiction. Thus, this request is also **DENIED** without prejudice.

**D. <u>Leave to Amend</u>**

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, "[t]he court should freely give leave when justice so requires." *Id.* At base, "leave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). Here, the Court finds that granting leave to amend would not be futile. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)).

Plaintiffs are **GRANTED LEAVE TO AMEND** the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations. Any amended complaint shall be filed within **21 days** of the date of this Order. Plaintiffs shall attach to the amended complaint a redline copy reflecting all additions and deletions of material from the Complaint. Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

//

//

//

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. The Motion is **DENIED** without prejudice as to all other requests.

**IT IS SO ORDERED.**

Dated: March 28, 2025

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE